IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| ESTATE OF KEANDRE BOST, Deceased,<br>By Andre Corrothers, Administrator<br>c/o C. A. Smith Law Office, LLC<br>1220 W. Sixth Street, Ste. 308<br>Cleveland, Ohio 44113<br><br>       Plaintiff,<br><br>       v.<br><br>FRANKLIN COUNTY/FRANKLIN COUNTY BOARD OF COMMISSIONERS, Kevin Boyce, John O'Grady, and Erica Crawley<br>373 South High Street, 26th Floor<br>Columbus, Ohio 43215<br><br>FRANKLIN COUNTY SHERIFF,<br>Dallas L. Baldwin<br>373 South High Street<br>Columbus, Ohio 43215<br><br>CORRECTIONAL OFFICER STEPHEN WITHROW<br>373 South High Street<br>Columbus, Ohio 43215<br><br>CORRECTIONAL OFFICER JACKIE LUCAS<br>373 South High Street<br>Columbus, Ohio 43215<br><br>CORRECTIONAL OFFICER JUSTIN COFFEY<br>373 South High Street<br>Columbus, Ohio 43215<br><br>JOHN AND JANE DOES I-X<br><br>       Defendants. | Case No.<br><br><br>JUDGE<br><br><br><br>COMPLAINT<br>(JURY DEMAND ENDORSED HEREIN) |

For its *Complaint*, the Estate of Keandre Bost, through its Administrator Andre Corrothers, alleges the following:

1. Decedent Keandre Bost was a pretrial detainee at the Franklin County Corrections Center I ("FCCC I") located at 370 S. Front Street, Columbus, Ohio 43215 from September 23, 2021 to December 7, 2021. Prior to Decedent's intake into FCCC I, Franklin County contracted with inmate medical care service provider Armor Health of Ohio, LLC, a subsidiary of parent company Armor Correctional Health Services, Inc, to provide medical care to inmates and pretrial detainees in FCCC I.

The named Defendants, herein, failed to provide Mr. Keandre Bost with necessary mental health care and medication and failed to take necessary steps to prevent his suicide by hanging. As a result, Keandre attempted suicide by hanging in his cell during the month of November of 2021. On December 7, 2021, Mr. Bost again attempted suicide by hanging in his jail cell and succumbed to his injuries therefrom on December 11, 2021.

## JURISDICTION AND VENUE

2. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq.; §504 of the Rehabilitation Act of 1973 (§504); 29 U.S.C. §794; Judicial Code, 28 U.S.C. §§1331 and 1343(a); and the Constitution of the United States.

3. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

4. Venue is proper in this District under 28 U.S.C. §1391(b). The parties reside, or, at the time

5. the events that took place resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

## PARTIES

6. On July 22, 2022, Andre Corrothers was appointed Administrator of the Estate of Keandre

Bost, deceased, by the Probate Division of the Common Pleas Court of Franklin County, Ohio, Case No. 2022EST270281. Mr. Corrothers is the father of Mr. Bost.

7. Defendant Franklin County was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio acting under the color of law. Defendant Franklin County is the employer and principal of Defendants Stephen Withrow, Jackie Lucas, Justin Coffey, and other unknown correctional officers and medical staff and is responsible for the policies, practices, and customs of the Franklin County Corrections Center. Defendant Franklin County is further responsible for ensuring that all of its facilities, including the Franklin County Correction Center I, are in compliance with federal and state law, department or agency policies, rules, and regulations, and related standards of care.

8. Defendants Kevin Boyce, John O'Grady, and Erica Crawley are, collectively, "Franklin County Council". The Franklin County Council has an administrative decision over all county employees. At all times relevant, herein, FCCC I employees and officers operated under the direction and supervision of the Franklin County Council members. Defendants Franklin County Council members are being sued in their official capacities.

9. Dallas L. Baldwin ("Sheriff") is the chief jailer of Franklin County. As such, he has charge of the FCCC I and all persons confined therein. He is statutorily charged with the responsibility of keeping such persons safe and attending to FCCC I according to the standards for jails in Ohio as promulgated by the Ohio Department of Rehabilitation and Corrections (ODRC). He is further mandatorily charged with the responsibility of following all applicable state and federal laws. Defendant Dallas L. Baldwin is being sued in his official capacity.

10. Defendant Correctional Officer Stephen Withrow was, at all times relevant to the

allegations made in this Complaint, a duly appointed correctional officer employed by Franklin County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

11. Defendant Correctional Officer Jackie Lucas was, at all times relevant to the allegations made in this Complaint, a duly appointed correctional officer employed by Franklin County, acting within the scope of her employment and under the color of state law. She is sued in her individual capacity.

12. Defendant Correctional Officer Justin Coffey was, at all times relevant to the allegations made in this Complaint, a duly appointed correctional officer employed by Franklin County, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

13. John and Jane Does I-X ("Does") are those individuals and entities who, at all relevant times, worked for the County and other corrections staff who worked inside or for FCCC I during the period of Mr. Bost's incarceration. These individuals had a duty to provide Keandre with adequate correctional care. Does are also nurses, medical doctors, caregivers, correctional healthcare workers, and those entities who employ and/or control other Does and/or other Defendants. Does are also those individuals or entities who are withholding information about Mr. Bost's incarceration and wrongful death despite a duty to release the information.

## FACTS

14. From September 23, 2021 to December 7, 2021, FCCC I was a department of Defendant Franklin County.

15. From September 23, 2021 to December 7, 2021, Franklin County Sheriff's Department, headed by Defendant Franklin County Sheriff Dallas L. Baldwin, was a department of Defendant Franklin County.

16. At all times relevant herein, all employees of FCCC I aside were employees of Defendant Franklin County.

17. At all times relevant herein, Defendant Franklin County owned, operated, supervised, and maintained FCCC I.

18. At all times relevant herein, Franklin County Sheriff's Department, at the direction of Defendant Franklin County Sheriff Dallas L. Baldwin owned, operated, supervised, and maintained FCCC I.

19. From September 23, 2021 to December 7, 2021, FCCC I operated its facility in furtherance of the business and obligations of Defendant Franklin County, but contrary to the health and welfare of the inmates/detainees.

20. On or about September 23, 2021, decedent Keandre Bost was booked into the custody of FCCC I as a pretrial detainee.

21. Upon entry to FCCC I, Decedent informed staff of his mental illness, including his previous suicide attempts. He also informed staff that he required psychiatric treatment, including medication.

22. Decedent Keandre Bost remained in the control and supervision of Defendants Franklin County, Franklin County Council, and Franklin County Sheriff Dallas L. Baldwin through December 7, 2021.

23. On September 23, 2021, Kimberly Wire classified Mr. Bost as a Category 2 inmate to be placed in SSI Housing.

5

24. On September 23, 2021, Stacey Ray assigned to Mr. Bost a "gang affiliation" alert.

25. On October 5, 2021, Benjamin Wotring created a notification that Mr. Bost should be kept separate from inmate Ryan Moore.

26. On October 8, 2021, Jacqueline Barber changed Mr. Bost's classification from Level 2 to Level 3.

27. On October 11, 2021 at 10:04AM, Benjamin Wotring moved Mr. Bost from cell 5ER2 to 5EL1 due to space issues.

28. On October 11, 2021 at 1:03PM, Benjamin Wotring moved Mr. Bost from 5E1 to 5W4 to "avoid problems" and a "keep separate" from Jumada Williams instruction was entered.

29. On October 15, 2021 at 3:37PM, Kennedy Holtman entered a notification Mr. Bost was moved from 5W4 to 5N2.

30. On October 15, 2021 at 3:54PM, Kristen Fredrickson entered a notification to keep Mr. Bost separate from inmate Melvin Christopher to avoid problems.

31. On October 15, 2021 at 7:20PM, Shannyn Kitchen entered a notification that Mr. Bost would be moved from 5W4 to 4EL1 to avoid problems.

32. On October 16, 2021 at 12:33AM, Theresa Erwin entered a note that Mr. Bost was transported from the Jail to the hospital with Deputies Hale and a nurse. At 2:48PM, Samantha Dickey entered a note that Mr. Bost was to be admitted to the hospital.

33. On October 16, 2021 at 1:31AM and 1:42AM, Theresa Erwin entered a notification to keep Mr. Bost separate from Christian Dillon, Carlos Favours, Ernest Murphy, Corey McGee, Tyree Stark, Timmaree Crawley, Roshan Cumberlander, and Darnell Walton.

34. On October 17, 2021, Samantha Dickey documented that Mr. Bost had returned from the hospital and was to be housed in 1MU2 until he was seen by medical.

35. On October 17, 2021, Shannyn Kitchen entered a note that Mr. Bost was to be placed in a medical single cell until cleared by medical.

36. On October 20, 2021, Kennedy Holtman created a note that Mr. Bost may return to general population as he no longer needed single cell medical housing.

37. On November 9, 2021 at 8:40PM, Michael Blakely moved Mr. Bost to 7NL9 to avoid problems and, at 8:47PM, Mr. Bost was sent by ER Squad to the hospital with Deputies Fowler and Boyd where he was admitted after attempting suicide by hanging.

38. On November 14, 2021 at 12:02AM, Chanel Caudill entered a note that Mr. Bost was to be placed on safety watch for mental health evaluation once he returned from the hospital.

39. On November 14, 2021 at 2:10PM, Mr. Bost returned from Grant Medical Center where he was placed on safety watch with a gown and blanket only.

40. On November 15, 2021 at 4:56AM, Therese Erwin made a note that Mr. Bost was to be removed from safety watch after receiving mental health authorization.

41. On November 15, 2021 at 7:38AM, Brittany Litman entered a note indicating that Mr. Bost would be removed from safety watch, only to enter a note instructing staff to disregard the message at 8:10AM and 12:42PM.

42. On November 17, 2021, Jason Oneto discharged Mr. Bost from safety watch and placed him on mental health evaluation.

43. On November 19, 2021, Jeremy Dech indicated that Mr. Bost would be removed from Mental Health Observation, per mental health authorization, from 1MU to 7WL1.

44. On November 23, 2021 at 5:11PM, Kennedy Holtman entered a note that Mr. Bost was in need of mental health observation, per mental health, would be allowed to have jail clothes, a mat, and a safety blanket, and would be housed in 1MU.

45. On November 23, 2021 at 6:02PM, Kennedy Holtan entered a note that Mr. Bost would be kept separate from inmates Raheem Williams and Rashad Short for fighting.

46. On November 24, 2021, Mr. Bost was discharged from mental health observation per mental health authorization and moved from 1MU2 to 8EL1.

47. On November 27, 2021 at 2:33AM, Theresa Erwin moved Mr. Bost from 8EL1 to 8NL12 due to an alleged fight and an entry to keep Mr. Bost separate from inmates Robert Humphrey and Logan Cowan was made.

48. On November 29, 2021, Lewis Schrader held two disciplinary hearings for several FCCC I violations that resulted in Mr. Bost being sentenced to a total of twenty-five (25) days in disciplinary lockdown with loss of privileges including commissary order.

49. On December 1, 2021 at 6:12PM, Jeremy Dech entered a note indicating that Mr. Bost had returned from the hospital although it is uncertain when Mr. Bost initially went to the hospital.

50. On December 3, 2021 at 3:51PM, Mr. Bost was moved from 8NR#12 to 8NR#11.

51. On December 7, 2021, Defendants Stephen Withrow and Jackie Lewis were assigned to the 8th floor of the FCCC I.

52. Based upon information and belief, Defendants Withrow and Lewis conducted their final watch tour and headcount at 10:40PM.

53. Based upon information and belief, nearly forty minutes later, Defendant Justin Coffey began his first watch tour and initial headcount at 11:19PM.

54. Based upon information and belief, at approximately 11:23PM, Mr. Bost was discovered by Defendant Coffey hanging from his cell bars with a sheet around his neck.

55. After being cut down from the bars and chest compressions were administered, Mr. Bost was transported to Grant Medical Center. Life-saving attempts failed, and Mr. Bost was taken off of life support on December 11, 2021 at Grant Medical Center.

56. By the time of his second hanging and ultimate suicide, Mr. Bost had been moved over ten (10) times.

57. By the time of his second hanging and ultimate suicide, FCCC I staff had been instructed to keep Mr. Bost away from at least twenty (20) inmates.

58. By the time of his second hanging and ultimate suicide, Mr. Bost had amassed the following alerts: Safety Watch; Mental Health Observation; Pending Disciplinary; SSI; Gang Affiliation; Medical Housing; and Single Cell Housing.

59. By the time of his second hanging and ultimate suicide, Mr. Bost had been taken to the hospital on at least three prior occasions, one of which was in response to a prior suicide attempt by hanging on November 9, 2021.

60. Despite Defendants' knowledge of Keandre Bost's despondency, his need for mental health care, and risk of injury, they were deliberately indifferent to his risk of suicide, particularly by hanging.

61. Medical staff employed by Armor Health of Ohio repeatedly gave mental health authorizations clearing Mr. Bost to return to general population despite his consistent state of mental health crisis.

62. Defendants failed to offer or procure appropriate intervention and precautions for Mr. Bost's serious, immediate, and life-threatening conditions.

63. Defendants jointly agreed and/or conspired with one another, and others, to complete false, misleading, and incomplete official reports and to give a false, misleading, and incomplete version

9

of the events to certain superiors and the public in order to cover up their own misconduct and failure to properly monitor Mr. Bost.

64. All of the actions of the Defendants and their named and unnamed co-conspirators, as set forth above and below, were taken jointly, in concert, and with shared intent.

65. All Defendants had a duty to care for and protect Mr. Bost while he was in their custody, and they failed to do so.

66. Defendants were deliberately indifferent to protecting Mr. Bost from harm and failed to prevent said harm, further failed to provide urgently needed medical and mental health care. Their conduct was unreasonable in failing to protect Mr. Bost from harm.

67. Upon information and belief, no member of the FCCC I staff has been disciplined in any way as a result of the conduct, acts, or omissions described in this Complaint.

68. As a direct and proximate result of these Defendants' actions, as detailed above, Keandre Bost and his heirs suffered, *inter alia*, injury, pain, distress, loss of love, affection, society, companionship, and consortium as well as other injuries as a result of his death and the continuing loss of his life.

69. The injuries suffered by Keandre Bost were all preventable had Defendants not engaged in illegal conduct in violation of his fundamental rights.

## DAMAGES

70. As a direct and proximate result of the acts set forth in this Complaint, Keandre Bost sustained pain and suffering prior to his death.

71. As a further direct and proximate result of the wrongful death of Keandre Bost, his survivors and/or heirs and family have suffered damages, including but not limited to, the loss of his support, services, and society, including lost companionship, care, assistance, attention,

protection, advice, guidance, counsel, instruction, training, and education, as well as pecuniary losses.

72. As a further direct and proximate result of the wrongful death of Keandre Bost, the Decedent's survivors and/or heirs have suffered damages, including but not limited to, grief, depression, and severe emotional distress.

## CLAIM I:
### Wrongful Death Pursuant to Ohio Revised Code §2125.01-2125.03
### (Against All Defendants)

73. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

74. Keandre Bost is survived by his heirs who have suffered and will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, financial and other support, companionship, guidance and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved one, and otherwise suffered damages to their detriment.

75. All named Defendants owed Decedent a duty of care.

76. All named Defendants breached their duty of care by committing acts and omissions that fell below the degree of care that a prudent person in like circumstances would exercise.

77. The wrongful death of Mr. Bost was proximately caused by the neglect, default, and/or willful, wanton, and/or reckless conduct of the Defendants.

78. The Defendant officers otherwise acted negligently, intentionally, and with malice and willful, wanton, and/or reckless indifference in committing the acts alleged in this complaint, which resulted in the injuries and wrongful death of Keandre Bost and his Estate.

## CLAIM II:
### Survivorship Action
### (Against All Defendants)

79. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

80. All Defendants breached their duty of care by committing acts and omissions that fell below the degree of care that a prudent person in like circumstances would exercise.

81. All of Defendants' negligent acts and omissions were the direct and proximate cause of injury to Decedent.

82. Defendants' acts and omissions were reckless, malicious, and reflected a conscious disregard for Decedents' health and safety.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that judgement be entered in its favor on all Counts and prays the Court award the following relief:

    A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Decedent's rights and his wrongful death;

    B. Punitive damages in an amount to be determined at trial;

    D. Attorneys' fees and the costs of this action pursuant to law; and

    E. All other relief which this Honorable Court deems equitable and just.

**A JURY IS REQUESTED TO HEAR THIS MATTER.**

**DATE SUBMITTED: March 25, 2025**

    Respectfully submitted,

    /s/ Clarissa A. Smith
    Clarissa A. Smith (OH #0095891)
    1220 W. 6th Street, Suite 308
    Cleveland, Ohio 44113
    Phone: (216) 327-1706 | Fax: (216) 274.9915
    Email: Clarissa.a.smithesq@gmail.com

*Counsel for Plaintiff*